FILED _____ ENTERED
_____ LODGED _____ RECEIVED

JUN 17 2010

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY



U.S. Department of Justice

United States Attorney
District of Maryland
Northern Division

Rod J. Rosenstein
United States Attorney

Rachel Miller Yasser
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4922
MAIN: 410-209-4800
FAX: 410-962-0716
TTY/TDD: 410-962-4462

May 20, 2010

**VIA EMAIL**
David Irwin, Esq.
301 W. Pennsylvania Avenue
Towson, Maryland 21204

    Re:    *U.S. v. George Anagnostou*

Dear Counsel:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant, **George Anagnostou**, by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. **If this offer has not been accepted by May 28, 2010, it will be deemed withdrawn.** The terms of the agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to waive indictment and plead guilty to a Criminal Information which will charge him with harboring aliens in violation of Title 8 of the United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

        a.    That the Defendant, knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in

violation of law;

b. Conceals, harbors, or shields from detection, or attempts to conceal, harbor or shield from detection;

c. Such alien in any place, including any building or any means of transportation.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: 10 years imprisonment, followed by 3 years of supervised release, and a fine of $250,000. In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

3

a. Pursuant to 2L1.1(a)(3), the base offense level is **12.**

b. Pursuant to 2L1.1(b)(2)(A), the offense level is **increased by 3 levels** because the offense involved the harboring of 6-24 unlawful aliens.

c. This Office does not oppose a **two-level reduction** in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

d. Thus, the expected total offense level, with credit for acceptance of responsibility, is **13**.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence within the Advisory Guidelines Range, as determined by the Court.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Forfeiture

11. The Defendant understands that the court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order of forfeiture may include assets directly traceable to his offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense. Specifically, the Court will order the forfeiture of the following:

   a. **$227,679.16** from BB&T Account #5150913715;

   b. **$19,393.14** from BB&T Account # 5154013964;

   c. **$31, 941.14** from Wachovia Account #2000020984007;

   d. **$5,167.53** from First Mariner Account #1419145;

   e. **$94,232.24** from First Mariner Account #1087886;

   f. **$76,406.12** seized from Timbuktu Restaurant on March 11, 2010;

   g. **$9,039.00** seized from By the Docks Restaurant on March 11, 2010;

   h. **$14,445.00** seized from 7401 Longfield Drive, Kingsville, MD 21087 on March 11, 2010;

   i. **$256,696.67** payable by check to Immigration and Customs Enforcement upon sentencing;

   j. 2009 Harley Davidson, Maryland Registration Number D05125.

The Defendant agrees to consent to the entry of orders of forfeiture for the above-mentioned property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The Defendant agrees that the Statement of Facts annexed hereto provides a sufficient legal and factual basis to support the forfeiture of property that constitutes the proceeds of the offense, or is traceable to the proceeds of the offense, or were used to facilitate the commission of the offense.

## Assisting the Government with Regard to the Forfeiture

12. The Defendant agrees to assist fully in the forfeiture of the foregoing assets.

The Defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant further agrees that he will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding and that he will testify truthfully in any such proceeding.

## Waiver of Further Review of Forfeiture

13. The Defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

## Civil Tax Liability

14. The Defendant agrees (i) to fully and truthfully cooperate with the IRS in determining the tax liability for individual income tax and Federal Insurance Contributions Act ("FICA") (employer and employee portions) due for 2004 through 2009, and (ii) to continue working with the IRS to expedite the assessment of income and employment taxes, penalties and interest owed by the Defendant for the years at issue. The Defendant agrees, as special conditions of probation or supervised release: (i) to pay back taxes, interest, and fraud penalties, and (ii) to provide all relevant information (including, but not limited to, all income, expenses, credit against income tax, taxes of any kind, and assets owned or held directly or indirectly by him, as well as all such assets transferred by him to any third parties since 2004, including the location of the said assets and identities of the third parties) within the Defendant's custody, care or control to the IRS in order to ascertain liability and negotiate in good faith for settlement. The Defendant further understands that this agreement does not resolve any civil or administrative liability that he may have, and that this agreement is with the United States Attorney's Office, not with the IRS. The IRS is not a party to this agreement and remains free to pursue any and all lawful remedies it may have.

## Waiver of Appeal

15. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a)  The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b) The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c) Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d) The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

16. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

17. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the

7

determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

18. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Rachel M. Yasser
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

5.26.10
Date

George Anagnostou

I am Mr. Anagnostou's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

5.26.10
Date

David Irwin, Esq.

# ATTACHMENT A
# STATEMENT OF FACTS

*The United States and the defendant stipulate and agree to the following facts that the United States would have proven beyond a reasonable doubt had this case proceeded to trial. They further stipulate and agree that these are not all of the facts that the United States would have proven had this matter gone to trial:*

George Anagnostou ("ANAGNOSTOU"), age 41, is a resident of Kingsville, Maryland. ANAGNOSTOU has been the primary owner of Timbutku Restaurant located at 1726 Dorsey Road in Hanover, Maryland since March 4, 2000, when he purchased the restaurant from his cousin, Michael Stavlas ("STAVLAS"). STAVLAS currently has a one percent ownership interest in Timbuktu Restaurant. Since at least 2005, ANAGNOSTOU has also been a co-owner of By the Docks Restaurant located at 3321 Eastern Boulevard in Middle River, Maryland.

On March 23, 1999, 10 unlawful aliens from Ecuador, Mexico and Indonesia were arrested by Immigration and Naturalization Service ("INS") agents during a search warrant executed at Timbuktu. The search warrant return indicated that a copy and receipt for items was provided to STAVLAS. STAVLAS was also advised the names of the ten illegal workers. On April 04, 2000, a Final Order was issued ordering Timbuktu to pay a fine and to cease and desist from employing and harboring illegal aliens. ANAGNOSTOU was aware of the immigration enforcement action, as well as the fact that Timbuktu employees were arrested and ordered deported as a result. Several of these individuals continued to work for Timbuktu after ANAGNOSTOU took over the restaurant.

Since 2000 and 2005, respectively, and continuously thereafter, ANAGNOSTOU was responsible for the hiring of employees at both Timbuktu and By the Docks. ANAGNOSTOU instructed those working at his direction to accept two forms of identification from applicants for employment, to make copies of the identification documents, and to keep the copies of the identification documents in the applicant's personnel file. Neither Timbuktu or By the Docks took any further steps to verify the authority of the applicant to be in or to work in the United States. The law required that Timbuktu and By the Docks complete Employment Eligibility Verification forms (I-9s), which required the employer to describe the two forms of identification produced by the applicant, and to sign the forms under the penalty of perjury attesting that the employer had reviewed the permissible identification documents and that they appeared to be genuine. When informed by his administrative employees and management that many of the applicants for the busboy and kitchen positions at both Timbuktu and By the Docks were presenting obviously fake or fraudulent identification documentation, ANAGNOSTOU instructed his employees to stop asking questions and to continue to make copies of the fraudulent documentation for the personnel files.

Several of ANAGNOSTOU's employees provided fraudulent immigration employment authorization cards in connection with their employment. When an employment authorization card 'expired,' those working at ANAGNOSTOU's direction would blindly accept a new employment authorization card. No effort was made to determine if the cards themselves were

genuine; in fact, several of the 'renewed' cards were in different names or contained different social security numbers than the original cards

During this same time period, Timbutku received notice from the Social Security Administration that the restaurant had a number of employees who were using Social Security Numbers that did not match the numbers maintained by the Social Security Administration. ANAGNOSTOU was made aware of these mismatch notices and made no effort to verify the Social Security numbers provided by his employees. All of the employees with mismatch Social Security numbers continued to be employed by Timbuktu after the mismatch information was received.

Over the last five years, ANAGNOSTOU harbored at least 24 unauthorized alien employees from Timbuktu and By the Docks for the purpose of private financial gain and commercial advantage and with reckless disregard for their status as illegal aliens. ANAGNOSTOU gained the benefit of their labor, which facilitated the operation of his two popular restaurants.[1] He was able to guarantee their continuing labor by providing housing in residences close to the restaurants, to include: 1704 Dorsey Road, 1730 Dorsey Road, 1723 Earhart Road, and 831 Chester Road. An unlawful alien employee was also living upstairs at the By the Docks Restaurant, and several unauthorized alien employees were living at 1738 and 1754 Dorsey Road, properties owned by STAVLAS. Many of these residences are aged, dilapidated structures with crowded and questionable living conditions, including broken windows.

With the exception of 1730 Dorsey Road, ANAGNOSTOU deducted rental payments from the overtime compensation owed to his unlawful alien employees, some of whom regularly worked up to 80 hours a week and were routinely paid overtime in cash to avoid their own tax liability. ANAGNOSTOU did not claim this rental income on his tax returns and did not withhold Federal Insurance Contributions Act ("FICA") (employer and employee portions) taxes from these overtime payments.

The residence located at 1730 Dorsey Road was a two bedroom structure located directly behind Timbuktu Restaurant that housed as many as ten unauthorized workers at one time. ANAGNOSTOU allowed the unauthorized alien employees to live at 1730 Dorsey Road rent-free. On February 14, 2010, 1730 Dorsey Road caught fire and several of the unauthorized alien employees living there were displaced. As a result, these illegal aliens stopped working for Timbuktu and left the state of Maryland.

On the morning of March 11, 2010, Immigration and Customs Enforcement executed several search and seizure warrants in connection with this investigation, during which time 29 unauthorized aliens were arrested at Timbuktu, By the Docks, 1738 Dorsey Road and 1754 Dorsey Road. It is stipulated that ANAGNOSTOU harbored at least 24 unauthorized alien employees from Timbuktu and By the Docks in the above-mentioned properties.

---

[1] The property set forth in Paragraph 11 of the plea letter represents proceeds of this offense or are traceable to proceeds of this offense.

I have read this Factual Stipulation with my attorney, and I do not wish to change any part of it. I understand this Statement of Facts. I am completely satisfied with the representation of my attorney.

5-26-10
Date

George Anagnostou

I am Mr. Anagnostou's attorney. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to enter into this Stipulation is an informed and voluntary one.

5-26-10
Date

David Irwin, Esquire